UNITED STATES BANKRUPTCY COURT
DISTRICT OF PUERTO RICO

IN RE:

A+HC HOLDING, INC.

Debtor

CASE NO. 11-01428 (BKT)

CHAPTER 11

EMERGENCY MOTION FOR LEAVE TO USE
BANCO POPULAR DE PUERTO RICO'S CASH COLLATERAL

**TO THE HONORABLE COURT:**

COMES NOW Debtor through its undersigned counsel and very respectfully submits the instant Emergency Motion for Leave to Use Banco Popular de Puerto Rico's ("BPPR") Cash Collateral (the "Motion"), as follows:

## I. INTRODUCTION

1. On February 24, 2011, Debtor filed its voluntary petition for relief pursuant to 11 U.S.C. Chapter 11.

2. On February 2, 2010, Debtor entered into a LOAN AND SECURITY AGREEMENT WITH WESTERNBANK PUERTO RICO for a maximum credit facility of $25,000,000.00, which was utilized by Debtor to purchase twenty two (22) pharmacies from PMC Marketing, Corp. ("PMC"), through a public sale, approved by this Court on January 15, 2010, in the case styled *In re PMC Marketing, Corp.*, case number 09-2048 (BKT), which loan is secured by substantially all of Debtor's assets (the "Loan").

3. Westernbank Puerto Rico ("Westernbank") was closed on April 30, 2010 by the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico, who appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver. FDIC

#

2/28/2011

A+HC Holding, Inc.  Case No. 11-01428 (BKT)
*Emergency Motion for Leave to Use*
*Banco Popular de Puerto Rico's Cash Collateral*  Page -2-

and BPPR entered into a loss sharing agreement as to Westernbank's assets, by which BPPR acquired the Loan.

4. At the time of the filing of Debtor's Chapter 11 case, Debtor owed BPPR $23,978,994.00 on the Loan. Debtor's encumbered assets had an estimated value of $32,810,225.00. As of November 2010, which will have to be adjusted as a result of the effects of the closing of Debtor's pharmacies.

5. As a result of the restrictions placed by Westernbank on the use of the funds originating from the Loan and charges made to Debtor, further reducing the availability of funds for Debtor to stock the acquired pharmacies, Debtor was unable to adequately stock the same, unable to fully implement the planned marketing strategies, and other operational changes, and as such couldn't meet the projections of its business plan, with detrimental effects on Debtor's cash flow, causing Debtor to be unable to comply with its financial obligations, including those under the Loan.

6. During February 2011, due to certain over advances under the Loan, made in the ordinary course of business, BPPR decided not to advance any further fumds to Debtor, which resulted in Debtor being unable to meet its payroll for the week ending on February 18, 2011, forcing Debtor to discontinue its operations and close its pharmacies, inter alia, to avoid civil and criminal implications of leaving the controlled pharmaceutical products without proper supervision.

## II  JURISDICTION AND VENUE

7. This Court has jurisdiction over the Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

8. Venue of this proceeding and of the Motion is proper in this district

A+HC Holding, Inc.  
*Emergency Motion for Leave to Use*  
*Banco Popular de Puerto Rico's Cash Collateral*

Case No. 11-01428 (BKT)

Page -3-

pursuant to 28 U.S.C. §§ 1408 and 1409.

9. The statutory basis for the relief requested herein are sections 105(a), 361, 362, 363, 364, 365, 1107 and 1108 of the Bankruptcy Code, and Fed. R. Bank. P. 4001(b) and Local Bankruptcy Rule 4001-2.

### III FACTS

10. As a result of the filing by Debtor of its Chapter 11 petition, Debtor has received the benefits of 11 U.S.C. § 362(a), which stays all collection actions and judicial proceedings against Debtor, thus preventing a run to the court house by creditors who were threatening suit, providing Debtor the opportunity to, in an organized manner, protect its prescription files and pharmaceutical inventory, and comply with applicable local and federal regulatory requirements, without the pressure that drove Debtor into Chapter 11, through a liquidation plan as envisioned by the Bankruptcy Code.

11. Prior to the Chapter 11 filing, Debtor intended to sell all of its pharmacies to two potential buyers. The sales, if executed; would have required Debtor to follow the procedures governing the sale of operating pharmacies, established by the Department of Health of Puerto Rico (the "Department of Health")[1].

12. The sale of the operating pharmacies would not have required Debtor to make any public notification as contemplated in Article 7.09 of Department of Health Regulation #142 of August 9, 2010.

---

[1] The Department of Health is the entity in charge of regulating the operations of pharmacies in Puerto Rico.

A+HC Holding, Inc.　　　　　　　　　　　　　　　　　　　　　　　Case No. 11-01428 (BKT)
*Emergency Motion for Leave to Use*
*Banco Popular de Puerto Rico's Cash Collateral*　　　　　　　　　　　　　　　Page -4-

13. Unfortunately, on Saturday February 12, 2011, one of the potential buyers indicated its inability to come up with the funds for completing the contemplated transaction.

14. On February 15, 2011, the other potential buyer, indicated its lack of interest in pursuing the purchase of the operating pharmacies,

15. On February 15, 2011, BPPR was informed by Debtor of the potential buyers' unavailabilty to purchase the pharmacies. BPPR consented for Debtor to sell certain pharmacies to other interested parties.

16. On February 16, 2011, Debtor informed BPPR that other interested parties had confirmed their willingness to close on the purchase of particular individual pharmacies and that Debtor could commence negotiating with the affected landlords for the assignment of the leases.

17. On February 17, 2011, BPPR notified Debtor that further credit facilities would not be available for the payment of the bi-weekly payroll due on February 18, 2011, meaning that the employees would be owed three weeks of salaries – the bi-weekly payroll covering January 29 through February 11 (2 weeks) and the work week of February 12th through February 18th (1 week). This forced Debtor to conclude its operations and close the pharmacies, inter alia, to avoid civil and criminal implications of leaving the controlled pharmaceutical products without proper supervision by pharmacists.

18. Article 7.09 of the Department of Health Regulation #142 of August 9, 2010, requires that any pharmacy planning to close or cease operations must notify the Department of Health thirty (30) days prior to the closing. Article 7.09 also

| A+HC Holding, Inc. | Case No. 11-01428 (BKT) |
| --- | --- |
| *Emergency Motion for Leave to Use* | |
| *Banco Popular de Puerto Rico's Cash Collateral* | Page -5- |

requires the pharmacy operator to give public notice to its customers thirty (30) days in advance of closing, to avoid interruption of medical services thereto.

19. The Department of Health procedures for the sale of an operating pharmacy do not require the thirty (30) day notification period since the change of ownership would be transparent to the customers and would only require an administrative process for the transferring of the operating license.

20. The Puerto Rico Administration for the Services of Mental Health and Against Addiction ("ASSMCA") is the designated state level agency in charge of regulating the sale of narcotics and controlled substances in Puerto Rico. ASSMCA has established procedures for the disposition of controlled substances in the event of the closing of a pharmacy.

21. The Drug Enforcement Administration (the "DEA") is the designated federal agency which regulates the sale of narcotics and controlled substances at the federal level. The DEA also has established procedures for the disposition of controlled substances in the event of the closing of a pharmacy.

22. On February 18, 2011, Debtor met with ASSMCA's representatives and notified them of Debtor's inability to meet the payroll due on that same day and that failure to do so would cause the employees to abandon the work place or take other measures which could affect the narcotics and controlled substances in Debtor's inventory custody or control, as well as customers' private medical information, and Debtor's property.

23. ASSMCA and Debtor agreed on a contingency plan to mitigate the potential risks involved in having the narcotics and controlled substances

A+HC Holding, Inc.  Case No. 11-01428 (BKT)
*Emergency Motion for Leave to Use*
*Banco Popular de Puerto Rico's Cash Collateral*  Page -6-

unattended and dispersed through Debtor's twenty two (22) pharmacies across Puerto Rico.

24. The contingency plan required Debtor to remove all narcotics and controlled substances from the twenty two (22) locations under armed escort and to concentrate the same in one pharmacy location in the metropolitan area under twenty four (24) hour surveillance, as quickly as humanly possible.

25. On February 18, 2011, Debtor's representatives also met with representatives of the DEA to inform the DEA of the aforesaid and present thereto Debtor's ASSMCA-approved contingency plan, which was reviewed and approved by the DEA.

26. At 4:00 p.m. on February 18, 2011, DEA's and ASSMCA's agents performed an inspection of the security procedures and measures present at the pharmacy to receive Debtor's narcotics and controlled substances inventory. The DEA and ASSMCA certified the location as complying with state and federal security regulations.

27. On February 18, 2011, Debtor's representatives also met with representatives of the Department of Health to notify them of the aforesaid, of the security agreements reached with ASSMCA and DEA and the imminent closing of the pharmacies.

28. During the evening of February 18 2011, Debtor informed its employees of Debtor's inability to meet the planned payroll and of Debtor's decision to discontinue operations.

A+HC Holding, Inc.                                                                 Case No. 11-01428 (BKT)
*Emergency Motion for Leave to Use*
*Banco Popular de Puerto Rico's Cash Collateral*                                              Page -7-

29. By February 22, 2011, Debtor had successfully executed the ASSMCA and the DEA approved contingency plan, secured all Health Insurance Portability and Accountability Act's ("HIPPA") patient information, and Debtor's property.

30. Due to the situation referred to above, Debtor was unable to comply with the thirty (30) day notification requirement of Article 7.09 of the Department of Health Regulation #142 of August 9, 2010, and at present the closing of the pharmacies have prevented customers from retrieving their prescriptions. These customers currently do not have access to their medication due to their prescriptions being securely located among the twenty two (22) pharmacies throughout Puerto Rico.

31. On February 22, 2011, Debtor met with representatives of the Department of Health who informed Debtor of the violation of Article 7.09 of the Department of Health Regulation #142 of August 9, 2010, and in writing instructed Debtor to immediately present a mitigation and contingency plan to comply with established rules and regulations.

32. On February 23, 2011, Debtor's representatives met with the Puerto Rico Commonwealth Patient Advocate Office's representatives who directed Debtor to appear before an administrative panel on February 25, 2011, with a mitigation and contingency plan.

33. On February 23, 2011, Debtor also met with representatives of the Department of Health and presented its contingency and mitigation plan consisting of the following:

A+HC Holding, Inc.　　Case No. 11-01428 (BKT)
*Emergency Motion for Leave to Use*
*Banco Popular de Puerto Rico's Cash Collateral*　　Page -8-

    i. Debtor will publish the thirty (30) day notice on Friday 25, 2011, as required by Article 7.09 of the Department of Health Regulation #142 of August 9, 2010.

    ii. Debtor will operate one pharmacy as a center where all patients can visit and claim their prescriptions or medications during a thirty (30) day period.

    iii. Debtor will concentrate all of the prescriptions in said pharmacy to facilitate the process.

    iv. Debtor will assist pharmacies in Puerto Rico in providing customers with their medications as set forth in Department of Health Administrative Order 297 of February 23, 2011.

### IV　DEBTOR'S NEED TO USE BANCO POPULAR DE PUERTO RICO'S CASH COLLATERAL AND BANCO POPULAR DE PUERTO RICO'S ADEQUATE PROTECTION

34.    On this date, Debtor will be opening its debtor in possession account with Banco Santander Puerto Rico as required by the OPERATING GUIDELINES AND REPORTING REQUIREMENTS FOR DEBTORS IN POSSESSION AND CHAPTER 11 TRUSTEES, and deposited therein all checks in its possession, in this fashion segregating these funds resulting from Debtor's pre-petition operations and encumbered in favor of BPPR.

35.    In order to effect the mitigation and contingency plan referred to above and thus safeguard the health of the affected customers and at the same time protect and preserve BPPR's collateral, Debtor needs to use BPPR's cash collateral.

A+HC Holding, Inc.  Case No. 11-01428 (BKT)
*Emergency Motion for Leave to Use*
*Banco Popular de Puerto Rico's Cash Collateral*  Page -9-

36. 11 U.S.C. § 363(c)(2) states that a debtor-in-possession may not use cash collateral unless each entity that has an interest in such cash collateral consents or the court, after notice and a hearing, authorizes such use in accordance with the provisions of section 363 of the Bankruptcy Code.

37. BPPR is adequately protected in Debtor's use of its cash collateral, since the mitigation and contingency plan referred to above, will allow Debtor to preserve BPPR's collateral and maximize the same, inclusively through probable sales of pharmacies, without which use this will not be possible. Debtor will comply with the reporting requirements under the Loan.

38. As set forth in 11 U.S.C.§ 361, when adequate protection is required under section 363 of an interest of an entity in property, such adequate protection may be provided by granting to such entity an additional or replacement lien to the extent that such use results in a decrease in the value of such entity's interest in such property, or by the granting of such other relief, other than entitling such entity to compensation allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

39. The interest in property entitled to adequate protection is the value of the collateral itself, not the right to foreclose and reinvest the foreclosure proceeds. *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365 (1988).

40. BPPR's interest in the stream resulting from the liquidation of Debtor's assets and in the probable sale of Debtor's pharmacies, which is not possible

| A+HC Holding, Inc. | Case No. 11-01428 (BKT) |
| --- | --- |
| *Emergency Motion for Leave to Use* | |
| *Banco Popular de Puerto Rico's Cash Collateral* | Page -10- |

without the aforesaid mitigation and contingency plan and the use of BPPR's cash collateral, is additional adequate protection to BPPR in Debtor's use of BPPR's cash collateral, since BPPR will be receiving a replacement lien of equal value or more than the requested use of its cash collateral. See *In re Mullen,* 172 B.R. 473 (Bankr. D. Mass. 1994), *In re Dynaco Corp.,* 162 B.R. 389 (Bankr.D.N.H.1993); *In re International Design & Display Group, Inc.,* 154 B.R. 362, 364 (Bankr.S.D.Fla.1993); *In re Ledgemere Land Corp.,* 116 B.R. 338, 343 (Bankr.D.Mass.1990); *In re T.H.B. Corp.,* 85 B.R. 192 (Bankr.D.Mass.1988). See also, Raymond T. Nimmer, *Adequate Protection,* CHAPTER 11 THEORY AND PRACTICE 16.72 (James F. Queenan, Jr., Philip J. Hendel, Ingrid M. Hillinger, eds., 1994) ("[W]here there is the likelihood that the new collateral will match or exceed values attributable to the property that is consumed, the grant of the replacement lien provides adequate protection").

41. The statutory scheme of Section 361 indicates that adequate protection is intended to encompass a broad range of creditor interests and does not mandate an interpretation of the creditors' interest as a whole of the economic bargain. It is clearly susceptible to differing applications over a wide range of fact situations and will depend, *inter alia,* on the nature of the collateral and its proposed use. *In re Briggs Transp., Co.,* 780 F2d. 1339 (8th Cir. 1985).

42. As such, Debtor should be allowed, as a matter of law, to use BPPR's cash collateral.

43. Debtor has an immediate need to use funds from its debtor in possession account in order to be able to implement the mitigation and contingency

A+HC Holding, Inc.  Case No. 11-01428 (BKT)
*Emergency Motion for Leave to Use*
*Banco Popular de Puerto Rico's Cash Collateral*  Page -11-

plan referred to above and has unsuccessfully attempted to obtain BPPR's consent to do so. Debtor is submitting as **Exhibit A** hereto a budget prepared for the five (showing the costs associated with the implementation of the mitigation and contingency plan referred to above which reflects that Debtor will need to use approximately $133,750.00 of BPPR's cash collateral.

44. No previous application for the relief sought herein has been made to the Court.

45. Debtor has carefully examined the matter object of the Motion and has concluded that there is a true need for it to be heard on an emergency *basis*. Debtor has not created the need for this emergency relief through any lack of due diligence.

## V  COMPLIANCE WITH LBR 4001-2

46. Pursuant to LBR 4001-2(a), Debtor sets forth the following:

   a. The total amount of the request is as stated in paragraph 41 above.

   b. The specific uses to which the funds will be put include payment of (i) statutory fees, operational expenses, taxes, insurance, wages and such other expenses as Debtor will incur to undertake the aforesaid, pursuant to the budget submitted as **Exhibit A** hereto.

   c. The amount of debt owed to BPPR is as stated in paragraph 4 above.

A+HC Holding, Inc.  Case No. 11-01428 (BKT)
*Emergency Motion for Leave to Use*
*Banco Popular de Puerto Rico's Cash Collateral*  Page -12-

   d.   The estimated value of Debtor's assets encumbered by BPPR's liens as of November 2010 was approximately as stated in paragraph 4 above.

   e.   Debtor submits that the value of the collateral in itself is adequate protection to BPPR to protect its secured interest therein, which is further protected by the replacement lien offered thereto herein.

   f.   Use of the cash collateral includes a $100,000.00 carve-out for U.S. Trustee and professional fees, as indicated in the budget included as **Exhibit A** hereto.

## NOTICE

Notice of this Motion has been electronically provided by the CM/ECF system which will send notification of such filing to the **United States Trustee**, and to all CM/ECF participants. Copy of this Notice will be sent by prepaid postage to: BPPR's counsel, **Luis Marini-Biaggi, Esq.**, American International Plaza, Suite 800, 250 Muñoz Rivera Ave., San Juan, PR 00918-1813; to those parties listed on **Debtor's List of Creditors Holding the 20 Largest Unsecured Claims**; Debtor's Utilities: **Puerto Rico Water Resources Authority**, PO Box 7066, San Juan, PR 00919-7066; **Puerto Rico Telephone Company**, PO Box 71401, San Juan, PR 00936-8501; **Puerto Rico Electric Power Authority**, PO Box 364267, San Juan, PR 00936-8501; **Claro**, PO Box 360998, San Juan, PR 00936; the Secretary of Justice of Puerto Rico, the **Honorable Guillermo Somoza Colombani**, PO Box 9020192,

| A+HC Holding, Inc. | Case No. 11-01428 (BKT) |
| --- | --- |
| *Emergency Motion for Leave to Use* | |
| *Banco Popular de Puerto Rico's Cash Collateral* | Page -13- |

San Juan, PR 00902-0192; the Secretary of the Treasury of Puerto Rico, the **Honorable Jesús F. Méndez Rodríguez**, PO Box 9024140, San Juan, PR 00902-4140; counsel for Treasury, **Migda Liz Rodríguez Collazo, Esq.**, PO Box 9020192, San Juan, PR 00902-0192; the President of Centro de Recaudación de Ingresos Municipales ("CRIM"), the **Honorable Gloria E. Santos Rosado**, PO Box 195387, San Juan, PR 00919-5387; counsel for CRIM, **Carmen Priscilla Figueroa, Esq.**, PO Box 195387, San Juan, PR 00919-5387; **Internal Revenue Service, Insolvency Group**, City View Plaza, 48 Carr 165, Suite 200, Guaynabo, PR 00968-8000; **Internal Revenue Service**, PO Box 7346, Philadelphia, PA 19101-7346; **U.S. Drug Enforcement Authority**, Metro Office Park, Millenium Park Plaza, 15 Calle 2 Suite 710, Guaynabo PR 00968-1743; the **Attorney General of the United States**, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001; **Civil Process Clerk**, Office of the U.S. Attorney for the District of Puerto Rico, Torre Chardon, Suite 1201, 350 Carlos E. Chardon Street, San Juan, PR 00918; the Director of the **Puerto Rico Commonwealth Patient Advocate Office**, Luz. T. Amador Castro, PO Box 11247, San Juan, PR 00910-2347; **Municipality of Bayamon**, PO Box 1588, Bayamon, PR 00960; **Municipality of Barceloneta**, PO Box 2049, Barceloneta, PR 00617; **Municipality of Caguas**, PO Box 907, Caguas, PR 00726-0907; **Municipality of Carolina**, PO Box 8, Carolina, PR 00984-0008; **Municipality of Cataño**, PO Box 428, Cataño, PR 00963-0428; **Municipality of Guayama**, PO Box 360, Guayama, PR 00785-0360; **Municipality of Guaynabo**, PO Box 7885, Guaynabo, PR 00970-7885; **Municipality of Humacao**, PO Box 178, Humacao, PR 00792-0178; **Municipality of Mayaguez**, PO Box 447, Mayaguez, PR

A+HC Holding, Inc.  
*Emergency Motion for Leave to Use*  
*Banco Popular de Puerto Rico's Cash Collateral*

Case No. 11-01428 (BKT)

Page -14-

00681-0447; **Municipality of Ponce**, PO Box 1709, Ponce, PR 00733-1709; **Municipality of San Juan**, PO Box 70179, San Juan, PR 00936-8179; **Municipality of San Sebastian**, PO Box 1603, San Sebastian, PR 00685-1603; **Municipality of Toa Baja**, PO Box 2359, Toa Baja, PR 00951-0082; **Municipality of Trujillo Alto**, PO Box 1869, Trujillo Alto, PR 00977-1869; and the **State Insurance Fund**, PO Box 365028, San Juan, PR 00936-5028. Debtor submits that such notice is proper under the circumstances and that no other or further notice is necessary.

**WHEREFORE,** it is respectfully requested that the Court schedules a preliminary hearing at its earliest convenience to authorize Debtor to use BPPR's cash collateral for an interim period of fifteen (15) days, with the adequate protection to BPPR for the use of the collateral indicated above, and that after the preliminary hearing, a final hearing on the Motion be scheduled if necessary, authorizing Debtor to use said cash collateral.

San Juan, Puerto Rico, this 28th day of February, 2011

**s/CHARLES A. CUPRILL-HERNANDEZ**
**USDC-PR 114312**
Charles A. Cuprill, P.S.C. Law Offices
356 Fortaleza Street, Second Floor
San Juan, PR 00901
Tel: 787-977-0515
Fax: 787-977-0518
E-Mail: ccuprill@cuprill.com

A+ HC Holding Inc.  EXHIBIT A
Case No. 11-01428 (BKT)11
Health Department Mitigation Plan
Cash Needs - Cash Use Budget

|  | 3/4/2011 | 3/11/2011 | 3/18/2011 | 3/25/2011 | 4/1/2011 | TOTAL |
|---|---:|---:|---:|---:|---:|---:|
| Operating Payroll (Store 45): |  |  |  |  |  |  |
| Pharmacists Payroll | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ - | $ 16,000 |
| Manager Payroll | 1,500 | 1,500 | 1,500 | 1,500 | - | 6,000 |
| Hourly Employees Payroll | 7,500 | 4,500 | 4,500 | 4,500 | - | 21,000 |
| Administrative Payroll (Central Office) | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 25,000 |
| Public Notice Costs | 6,250 | - | - | - | - | 6,250 |
| System Support | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 10,000 |
| Logistics costs | 1,000 | 1,000 | 500 | 500 | 500 | 3,500 |
| Insurance | 30,000 | - | - | - | - | 30,000 |
| Electric Power and Utilities - Store 45 | 10,000 | - | - | - | - | 10,000 |
| Telecommunication Costs | - | - | - | 1,000 | - | 1,000 |
| Other Expenses | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 5,000 |
|  | $ 68,250 | $ 19,000 | $ 18,500 | $ 19,500 | $ 8,500 | $ 133,750 |